Gilmur R. Murray (SBN 111856)
Derek G. Howard (SBN 118082)
Scott J. Yundt  (SBN 242595)
**MURRAY & HOWARD, LLP**
436 14th Street, Suite 1413
Oakland, California 94612
Telephone:     (510) 444-2660
Facsimile:     (510) 444-2522

Daniel J. Mulligan (SBN 103129)
Larry W. Gabriel (SBN 68329)
**JENKINS MULLIGAN & GABRIEL, LLP**
660 Market Street, 3rd Floor
San Francisco, CA 94104
Telephone:     (415)-982-8500
Facsimile:     (415)-982-8515

*Attorneys for Plaintiffs and the Class*          *Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DEE CRAVENS, on behalf of
himself and all others similarly situated,

Plaintiff,

vs.

LEXAR MEDIA, INC.;
HITACHI AMERICA, LTD.;
HITACHI, LTD.;
HITACHI ELECTRONIC DEVICES USA;
HYNIX SEMICONDUCTOR AMERICA, INC.;
HYNIX SEMICONDUCTOR, INC.;
MICRON TECHNOLOGY, INC.;
MICRON SEMICONDUCTOR PRODUCTS, INC.;
MITSUBISHI ELECTRIC CORPORATION;
MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC.;
MOSEL VITELIC CORPORATION;
MOSEL VITELIC, INC;
RENESAS TECHNOLOGY CORPORATION;
RENESAS TECHNOLOGY AMERICA, INC.;
SAMSUNG SEMICONDUCTOR, INC.;
SAMSUNG ELECTRONICS COMPANY, LTD.;
TOSHIBA CORPORATION;
TOSHIBA AMERICA, INC.; AND
TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.,
WINBOND ELECTRONICS CORPORATION;
WINBOND ELECTRONICS CORPORATION AMERICA, INC.;

Defendants.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## I.    NATURE OF THE CASE

1.    Plaintiff brings this lawsuit as a Class Action on behalf of individuals and entities who purchased Flash Memory INDIRECTLY from Defendants, their subsidiaries, agents, or co-conspirators during the period from at least January 1, 1999 through the present ("Class Period").

2.    As used herein, the term "Flash Memory" means all types of Flash Memory sold during the Class Period, including AND, Not AND ("NAND"), and Not OR ("NOR") technologies.  For purposes of this complaint, Flash Memory excludes all types of static random access memory ("SRAM") or dynamic random access memory ("DRAM") sold during the Class Period.

3.    Flash Memory is non-volatile computer memory that can be electronically erased and reprogrammed.  It is a technology that is primarily used in memory cards, but also found in digital audio players, digital cameras, mobile phones and video game consoles.  Flash Memory is the most popular ,and costs far less than competing forms of memory, and has therefore become the dominant technology wherever a significant amount of non-volatile, solid-state storage is needed.  It is a "stand alone product" as explained in the following paragraphs.

4.    During the Class Period, Defendants' collusive behavior artificially inflated the price of Flash Memory.  Defendants participated in cartel-like behavior to fix the prices of these products.  Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the Class paid artificially inflated prices for Flash Memory.  Plaintiff and other members of the Class who purchased these products have been damaged by Defendants' illegal actions.

## II.    JURISDICTION AND VENUE

5.    This complaint is filed pursuant to Section 16 of the Clayton Act, 15 U.S.C. 26, seeking injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. 1.  In addition, plaintiff and the class seek damages for violations of state antitrust and consumer protection laws.  Plaintiff and the class also seek to recover the costs of suit, including reasonable attorneys' fees,

CLASS ACTION COMPLAINT

1  for the injuries suffered as a result of the Defendants' violations of those laws.

2      6.      This Court's jurisdiction is based on 28 U.S.C. 1331 and 1337. The Court also has

3  jurisdiction over the state law claims under 28 U.S.C. 1367 because those claims are so related to

4  the federal claim that they form part of the same case or controversy. The Court also has

5  jurisdiction over the state law claims under 28 U.S.C. 1332 because the amount in controversy for

6  the Class exceeds $5,000,000 and there are members of the Class who are citizens of a different

7  state than the defendants.

8      7.      Venue is proper in this Judicial District given that plaintiff resides in this district,

9  defendants reside, transact business, or are found within this District, and a substantial part of the

10  events giving rise to the claims arose in the District.

11

12  **III.    PARTIES**

13      **A.    Plaintiff**

14      8.      **DEE CRAVENS**, is an individual who purchased Flash Memory indirectly from

15  one or more of the Defendants during the Class Period at artificially high prices as a result of the

16  Defendant's illegal conspiracy and unlawful acts.

17      **B.    Defendants**

18      9.      Defendant **HITACHI AMERICA, LTD** is incorporated in the State of New York

19  with its principle place of business at 50 Prospect Ave, Tarrytown, New York 10591. It is a

20  wholly owned subsidiary of Defendant Hitachi Ltd. During the Class Period, Hitachi America

21  Ltd. sold and distributed Flash Memory to customers throughout the United States.

22      10.     Defendant **HITACHI, LTD.** is a business entity organized under the laws of Japan

23  with its principal place of business at 6-1 Marunoyuchi Center Building 13F Chiyodaku, Tokyo,

24  100-8220, Japan. During the Class Period Hitachi, Ltd. sold and distributed Flash Memory to

25  customers throughout the United States.

26      11.     Defendant **HYNIX SEMICONDUCTOR AMERICA, INC**. is a wholly

27

28                          **CLASS ACTION COMPLAINT**

1    owned and controlled subsidiary of Defendant Hynix Semiconductor, Inc. with its principal place

2    of business at 3101 North First Street, San Jose, California, 95134.  Hynix Semiconductor

3    America, Inc. is a California corporation.  During the Class Period, Hynix Semiconductor

4    America, Inc. sold and distributed Flash Memory to customers throughout the United States.

5    Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to collectively

6    herein as "Hynix."

7          12.     Defendant **HYNIX SEMICONDUCTOR, INC**. is a business entity

8    organized under the laws of South Korea, with its principal place of business at SAN 136-1, Ami-

9    Ri Bubal-eub, Icheon-si, Kyoungki-do, Korea, 467-701. During the Class Period, Hynix

10   Semiconductor, Inc. manufactured, sold and distributed Flash Memory to customers throughout

11   the United States.

12         13.     Defendant **MICRON TECHNOLOGY, INC.** is a Delaware Corporation with its

13   principal place of business at 8000 South Federal Way, Boise, Idaho, 83716.  During the Class

14   Period, Micron Technology, Inc. manufactured, sold and distributed Flash Memory throughout

15   the United States.

16         14.     Defendant **MICRON SEMICONDUCTOR PRODUCTS, INC**. is a corporation

17   formed under the laws of Delaware.  Micron Semiconductor Products, Inc. is a wholly owned and

18   controlled subsidiary of Defendant Micron Technology, Inc. with its principal place of business at

19   8000 South Federal Way, Boise, Idaho, 83716.  During the Class Period, Micron Semiconductor

20   Products, Inc. sold and distributed Flash Memory to customers throughout the United States.

21         15.     Defendant **LEXAR MEDIA, INC.** is a Delaware corporation with its principal

22   place of business at 47300 Bayside Parkway, Fremont, California, 94538.  During the Class

23   Period, Lexar Media, Inc. sold and distributed Flash Memory to customers throughout the United

24   States.  Lexar Media was bought by Micron Technology, Inc.  Lexar Media, Inc., Micron

25   Technology, Inc., and Micron Semiconductor Products, Inc. are referred to collectively herein as

26   "Micron."

27

28                              **CLASS ACTION COMPLAINT**

1    16.    Defendant **MITSUBISHI ELECTRIC CORPORATION,** is a business entity

2    organized under the laws of Japan, with its principal place of business at Tokyo Building 2-7-3,

3    Marunouchi, Chiyoda-ku, Tokyo, 100-8310, Japan. During the Class Period, Mitsubishi Electric

4    Corporation sold and distributed Flash Memory to customers throughout the United States.

5    17.    Defendant **MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC.,** is

6    incorporated in the State of Delaware with its principal place of business at 500 Corporate Wood

7    Parkway, Vernon Hills, Illinois 60061. It is a Wholly owned subsidiary of Mitsubishi Electric

8    Corporation. During the Class Period, Mitsubishi Electric and Electronics USA, Inc. sold and

9    distributed Flash Memory to customers throughout the United States. Defendant Mitsubishi

10   Electric Corporation and Mitsubishi Electric and Electronics USA, Inc. are referred to collectively

11   herein as "Mitsubishi."

12   18.    Defendant **MOSEL VITELIC CORPORATION**, is incorporated in the State of

13   California with its principal place of business at 3910 North First Street, San Jose, California

14   95134. It is a wholly owned subsidiary of Mosel Vitelic Inc. During the Class Period, Mosel

15   Vitelic Corporation sold and distributed Flash Memory to customers throughout the United States.

16   19.    Defendant **MOSEL VITELIC, INC.** is a business entity organized under the laws

17   of Taiwan with its principal place of business at No. 19 Li Hsin Road, Science-Based Industrial

18   Park, Hsinchu, Taiwan. During the Class Period, Mosel Vitelic, Inc. sold and distributed Flash

19   Memory to customers throughout the United States. Defendant Mosel Vitelic Corporation and

20   Mosel Vitelic, Inc.. are referred to collectively herein as "Mosel."

21   20.    Defendant **RENESAS TECHNOLOGY CORPORATION** is a business entity

22   organized under the laws of Japan with its principal place of business at Marunouchi Building, 4-

23   1, Marunouchi 2-chrome, Chiyoda-ku, Tokyo, 100-6334, Japan. Renesas Technology Corporation

24   was established on or about April 1, 2003 as a joint venture of Hitachi and Mitsubishi. During the

25   Class Period, Renesas Technology Corporation sold and distributed Flash Memory to customers

26   throughout the United States.

27

28
                              **CLASS ACTION COMPLAINT**

1    21.    Defendant **RENESAS TECHNOLOGY AMERICA, INC.** is a Delaware

2    corporation and is a wholly owned and controlled subsidiary of Renesas Technology Corporation

3    with its principal place of business at 450 Holger Way, San Jose, California, 95134-1368.  During

4    the Class Period, Renesas Technology America, Inc. sold and distributed Flash Memory to

5    customers throughout the United States.  Defendants Renesas Technology Corporation and

6    Renesas Technology America, Inc. are referred to collectively herein as "Renesas."

7    22.    Defendant **SAMSUNG SEMICONDUCTOR, INC**. is a California corporation

8    and is a wholly owned and controlled subsidiary of Samsung Electronics Co. Ltd. with its

9    principal place of business at 3655 North First Street, San Jose, California, 95134.  During the

10   Class Period, Samsung Semiconductor, Inc. sold and distributed Flash Memory to customers

11   throughout the United States.

12   23.    Defendant **SAMSUNG ELECTRONICS COMPANY, LTD**. is a business entity

13   organized under the laws of South Korea, with its principal place of business at Samsung Main

14   Building, 250-2 ga, Taepyung-ro, Chung-gu, Seoul, Korea.  During the Class Period, Samsung

15   Electronics Company, Ltd. sold and distributed Flash Memory to customers throughout the

16   United States.  Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. are

17   referred to collectively herein as "Samsung."

18   24.    Defendant **TOSHIBA CORPORATION** is a business entity organized under the

19   laws of Japan, with its principal place of business at 1-1 Shibaura, 1-chrome Minato-ku, Tokyo,

20   105-8001, Japan.  During the Class Period, Toshiba Corporation sold and distributed Flash

21   Memory to customers throughout the United States.

22   25.    Defendant **TOSHIBA AMERICA CORPORATION** is a Delaware corporation

23   and is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place

24   of business at 1251  Avenue of the Americas, Suite 4110, New York, New York, 10020.  During

25   the Class Period, Toshiba America Corporation manufactured, sold and distributed Flash Memory

26   to customers throughout the United States.

27

28

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7

26.    Defendant **TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC**. is a California corporation and is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business located at 19900 MacArthur Boulevard, Suite 400, Irvine, California, 92612.  During the Class Period, Toshiba America Electronic Components, Inc. sold and distributed Flash Memory to customers throughout the United States.  Toshiba Corporation, Toshiba America Corporation, and Toshiba America Electronic Components, Inc. are referred to collectively herein as "Toshiba."

8
9
10
11
12

27.    Defendant **WINBOND ELECTRONICS CORPORATION** is a business entity organized under the laws of Taiwan with its principal place of business at No. 4 Creation Road 3, Science-Based Industrial Park, Hsinchu, 300, Taiwan.   During the Class Period, Winbond Electronics Corporation sold and distributed Flash Memory to customers throughout the United States.

13
14
15
16
17
18
19

28.    Defendant **WINBOND ELECTRONICS CORPORATION AMERICA, INC.** is incorporated in the State of Delaware with its principal place of business at  2727 North First Street, San Jose, California 95134. It is a wholly owned subsidiary of Winbond Electronics Corporation. During the Class Period, Winbond Electronics Corporation America Inc. sold and distributed Flash Memory to customers throughout the United States. Defendant Winbond Electronics Corporation and Winbond Electronics Corporation America, Inc. are referred to collectively herein as "Winbond."

20

**C.    Agents And Co-Conspirators**

21
22
23

29.    At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.

24
25
26

30.    Defendants, along with certain other corporations, entities, and persons are co-conspirators in the violations and cartel behavior alleged in this Complaint.  These co-conspirators have performed acts and made statements in furtherance of the antitrust violations

27
28

**CLASS ACTION COMPLAINT**

and conspiracies alleged herein.

31.    Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this complaint.

32.    Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

**D.    Unnamed Participants**

33.    Numerous individuals and entities participated actively during the course of and in furtherance of the price-fixing scheme herein alleged.  There was a conspiracy and many acts were done in the course of and in furtherance of the conspiracy by statements, conduct, and intent to defraud.  The individuals and entities acted in concert by joint ventures and by acting as agents for principals, in order to advance the objectives of the conspiracy.  The acts were intended to promote the conspiratorial objectives.

**IV.    CLASS ACTION ALLEGATIONS**

34.    Plaintiff brings this action himself and on behalf of the following Class in accordance with Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

> All persons and entities currently residing in the United States who, from January 1, 1999 through the present, purchased Flash Memory in the United States.  Excluded from this Class are the Defendants; their parents, predecessors, successors, subsidiaries, units, divisions, employees, officers, directors; co-conspirators; government entities; and any and all judges and justices (and members of their immediate families) assigned to hear any aspect of this case.

35.    This action is appropriate for class treatment under Federal Rule of Civil Procedure 23 because:

a.    The Class is ascertainable and there is a well-defined community of

**CLASS ACTION COMPLAINT**

1      interest among the members of the Class;

2  b.   Plaintiff is informed and believes, and thus alleges, that there are hundreds

3      of thousands, if not over a million, class members.  As a result, joinder of

4      Class members is not practicable;

5  c.   Plaintiff claims are typical of the Class members' claims.  Plaintiff

6      purchased Flash Memory in the United States, and therefore Plaintiff's

7      claims arise from the same conduct giving rise to the Class members'

8      claims.  Similarly, the relief sought is common to the Class;

9  d.   The following are common questions of law and fact among Plaintiff and

10      the Class:

11      i.   Defendants formed and operated a combination or conspiracy to fix

12        or maintain the prices of Flash Memory;

13      ii.  What acts Defendants and their co-conspirators committed in

14        furtherance of the conspiracy;

15      iii.  The effect of Defendants' and their co-conspirators' acts on the

16        prices charged for Flash Memory;

17      iv.  The impact on Plaintiff and the members of the Class as a result of

18        Defendants' and their co-conspirators' conduct;

19      v.   the measure of damages suffered by the Class;

20      vi.  How long Defendants' and their co-conspirators' conspiracy lasted,

21        and how long its effects were felt;

22      vii.  the identities of the co-conspirators;

23      viii. whether an injunction is necessary to cause Defendants not to

24        engage in illegal acts;

25      ix.  whether Defendants' conduct constitutes a violation of Section 1 of

26        the Sherman Act, 15 U.S.C. 1;

27

28                  **CLASS ACTION COMPLAINT**

x.  whether Defendants' conduct constitutes a violation of California

Business and Professions Code sections 16720 and

17200;

xi.  whether Defendants' conduct constitutes a violation of the antitrust,

unfair competition, and common laws of the states as alleged in the

Fourth Claim for Relief below; and

xii.  whether Defendants engaged in concealment of their conspiracy

from Plaintiffs and other Class members;

e.  These questions of law and fact are common to the members of the Class

and therefore predominate over any questions affecting only individual

members of the Class;

f.  Plaintiff will fairly and adequately protect the interests of the Class and

Plaintiff has no interests that are antagonistic to other members of the

Class;

g.  Plaintiff has retained counsel competent and experienced in the prosecution

of antitrust litigation and class actions to represent himself and the Class;

h.  A class action is superior to other available methods for the fair and

efficient adjudication of this dispute.  Individual joinder of all damaged

Class members is impractical.  Further, because the damages suffered by

individual Class members are relatively small it would not be feasible for

Class members to vindicate their claims unless Rule 23's class action

procedures are applied.  Individual litigation of these claims would be

costly and could create the risk of inconsistent or contradictory judgments

and will also greatly magnify the delay and expense to all parties and to the

judicial system.  The use of the class action procedure presents many less

case management difficulties.  A single adjudication, economies of scale,

CLASS ACTION COMPLAINT

and the supervision by a single court are salutary goals which may be

achieved through use of the class mechanism;

i.    Unless the class procedure is used, Defendants will be unjustly enriched

because they will be able to retain the benefits of their wrongful conduct;

and

j.    the claims in this case are also properly certifiable under the laws of the

State of California, and of the other individual states identified below.

## V.    MARKET AND COMMERCE

36.    Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling Flash Memory throughout the United States.  During the Class Period of January 1999 through the present, total sales of Flash Memory were in the billions of dollars.

37.    The market for the manufacture and sale of Flash Memory is conducive to the type of collusive activity alleged here.

38.    The Flash Memory market is oligopolistic in nature.  Samsung is the clear market leader followed by Toshiba, Hynix, Renesas, and Micron.  According to the iSuppli website, the leading Flash Memory manufacturers in 2005 were as follows:

| | |
|---|---|
| Samsung: | 52.9% |
| Toshiba: | 21.9% |
| Hynix: | 12.7% |
| Renesas: | 6.8% |
| Micron: | 2.2% |

39.    These five entities control over 96.5% of the Flash market.

40.    The market for Flash Memory is large, with worldwide revenues in excess of $12 billion in 2006, and growing.

## VI.    PRODUCT AND TRADE

41.    The market for the manufacture and sale of Flash Memory is subject to high manufacturing and technological barriers to entry.  Efficient fabrication plants are large and

CLASS ACTION COMPLAINT

1    costly.  Flash Memory is also subject to technological advances, so that firms within the industry

2    must undertake significant research and development expenses.

3        42.    Further, Flash Memory is a homogeneous product sold by Defendants and

4    purchased by Plaintiff and members of the Class primarily on the basis of price.

5        43.    Manufacturers of electronic products and devices, and resellers of Flash Memory

6    components purchase Flash Memory directly or indirectly from the Defendants.  These electronic

7    products and devices and Flash Memory components are then sold, directly or indirectly, to

8    consumers.

9        44.     Defendants sell Flash Memory through various channels, including to

10   manufacturers of electronic products and devices, and to resellers of products containing Flash

11   Memory.  These electronic products and devices are then sold to consumers, directly or indirectly,

12   and are not altered during the course of sale.

13       45.    California is the largest market in the world for Flash Memory and is the world

14   wide center of the high technology industry and other industries that depend upon Flash Memory.

15   Statements concerning the prices and market conditions for Flash Memory were disseminated by

16   Defendants from and into California on a regular and continuous basis.

17   **VII.    FACTUAL ALLEGATIONS**

18       **A.    Background Of Chips**

19       46.    Flash Memory is a type of electronic memory chip with a read-only memory that

20   retains its data when the power is turned off and that can be electronically erased and

21   reprogrammed without being removed from the circuit board.  Flash Memory is non-volatile

22   meaning that it does not need continuous power to maintain the information stored for the chip.

23   Flash Memory is produced in the form of an integrated chip which is used in a variety of

24   applications, including memory cards, digital audio players, digital cameras, mobile phones, video

25   game consoles, USB storage devices, fax machines and personal computers.  Some examples of

26   Flash Memory are:

27

28                                    **CLASS ACTION COMPLAINT**

1        a.      a computer's BIOS chip,

2        b.      CompactFlash (most often found in digital cameras),

3        c.      SmartMedia (most often found in digital cameras),

4        d.      Memory Stick (most often found in digital cameras),

5        e.      PCMCIA Type I and Type II memory cards ,

6        f.      memory cards for video game consoles,

7        g.      iPod and Shuffle music players use NAND Flash Memory chips to store

8                songs,

9        h.      Apple's new iPhone also uses Flash Memory.

**Plaintiff's LEXAR MEDIA CompactFlash**

**Will need to insert images here—See CPM compliant**

**Examples of USB Storage Devices**

**Will need to insert images here—See CPM compliant**

**Example of SmartMedia**

**Will need to insert images here—See CPM compliant**

**B.      Stand-Alone Product**

47.      Flash memory is also a stand-alone product.  It is not always subsumed within, or a part, of another product.  When a consumer purchases Flash memory card, they can do so by buying the product itself not another product of which Flash memory is a component. For that reason, determination of the amount by which plaintiff and the class suffered antitrust damages is not complicated by the need to determine the extent to which defendants' price-fixing conduct inflated the price of various components.  One need only examine the extent to which Flash memory card prices were inflated.

**CLASS ACTION COMPLAINT**

1

**C.     Applications**

2      48.     Non-Volatile memory is computer memory that can retain the stored information

3   even when not powered.  Examples include read only memory, Flash Memory, hard disks, floppy

4   disk drives, magnetic tape and optical drives.  Non-Volatile Memory is usually used for the task

5   of secondary storage or long-term persistent storage. The most widely used primary storage is a

6   volatile form of RAM, meaning when the computer is shut down, anything contained in RAM is

7   lost.

8      49.     Flash has long been used to make thumb-size USB drives popular for transferring

9   data between home and office.  What's new in Flash is that it is just now becoming cheap enough

10  that flash chips can be used as the innards of solid-state drives to replace traditional disk drives,

11  which provide long-term storage on your computer.  This new breed of solid-state drives have the

12  same housings and connections as hard-disk drives.  Your computer will not know the difference,

13  except the solid-state drive will be lighter, quieter, more energy efficient and, absent moving

14  parts, more reliable.

15     50.     Unlike hard-disk drives, Flash Memory handles data all electronically without the

16  use of motors.  A traditional disk drive takes time to spin around and position itself so that the

17  needed data are underneath the drive "head" that does the reading and writing.  There is no such

18  delay with flash, because it's all nonmoving, solid-state electronics.  The minute or so needed to

19  boot up from a hard drive can thus be cut up to half if Flash Memory is used instead.  Flash

20  Memory PCs are also lighter.  Samsung Electronics Co. has developed a Flash Memory storage

21  device that comes in at 15 grams, 25% the weight of a hard drive.

22     51.     Because of the minuscule size of Flash Memory, manufacturers are able to develop

23  smaller and lighter products.  An example would be Motorola's RAZR mobile phone, which is the

24  thinnest cell phone available.

25     **D.     Different Types of Flash Memory**

26     52.     Currently, NOR and NAND are the two main types of nonvolatile memory chips

27

28                                          **CLASS ACTION COMPLAINT**

1  used in electronic devices to retain data when power is switched off.  NOR chips excel at reading

2  data at high speed, making them suitable for running software in cell phones, while NAND chips -

3  widely used in digital cameras and music players – write data at high speed and generally have

4  greater storage capacity.  "NAND Flash has wider application and greater market potential than

5  NOR," acknowledged Toshiba spokeswoman Hiroko Mochida.  "As more mobile phones require

6  larger capacity to store large-sized music and video files, NAND Flash Memory, which is (better)

7  for larger-storage, will take over the NOR Flash market," said Shin Young-jun, an official at

8  Samsung Electronics.

9        53.     NOR and NAND are Flash Memory chips constructed of either NOR or NAND

10  logic gates.  Electronic logic gates are a collection of transistors and resistors that perform a

11  logical operation on one or more logic inputs and produce a single logic output.  The logic

12  normally performed is boolean logic and is commonly found in digital circuits.  Transistors make

13  up logic gates.  Logic gates make up circuits.  Circuits make up electronic systems.  NOR chips

14  function like a computer's main memory, while NAND works like a hard disk.  An example

15  would be, in a digital camera, NOR Flash Memory contains the camera's internal software, while

16  NAND Flash Memory is used to store the pictures.

17        54.     A logic gate is an elementary building block of a digital circuit.  There are seven

18  logic gates: NAND, NOR, AND, OR, NOT, XOR, and XNOR.  Most logic gates have two input

19  terminals and one output terminal.  Every terminal is in one of two binary conditions that is

20  represented by different voltage.

21        55.     NOR Flash Memory was developed by Intel in 1988.  NOR Flash Memory

22  supports one-byte random access and "execute in place" (XIP), which means machine instructions

23  can be obtained and executed directly from Flash Memory without going into main memory

24  (DRAM) first as is required with NAND Flash Memory.  NOR Flash Memory has a lifespan of

25  about 100K write cycles.  As with all Flash Memory, the cells must be erased in large blocks

26  before being written.  Erasing a block of typically 16KB takes several seconds, but reading and

27

28                                    **CLASS ACTION COMPLAINT**

1    writing one byte at a time is very fast.  NAND Flash Memory was developed by Toshiba a year

2    after Intel's NOR Flash Memory.  NAND Flash Memory functions like a disk rather than memory.

3    Flash Translation Layer software makes flash look like a disk drive to the operating system.

4    "Reads and writes" are sector-sized blocks of 512 bytes; however, typically, a 2KB page of four

5    blocks are read and written at the same time.  Before writing, cells are erased in blocks ranging

6    from 16KB to 128KB.  Less expensive than NOR, NAND Flash Memory can be rewritten up

7    to a million times, and erasing and writing NAND is faster than NOR.

8        56.     AND is another stand alone NAND-like chip.  Hitachi and Mitsubishi

9    manufactured, sold, and distributed AND.  Renesas, a product of the merger between Hitachi and

10   Mitsubishi, also produces AND and AG-AND chips.

11       57.     Micron Technology and Intel Corporation are sampling industry-leading 50nm

12   multi-level cell (MLC) NAND Flash Memory manufactured by their NAND Flash Memory joint

13   venture, IM Flash Technologies.  The new MLC NAND Flash Memory components feature a

14   world-class die and cell size ideally suited for use in today's computing and consumer electronics

15   devices that are increasingly smaller and more efficient themselves.  The 50nm MLC technology,

16   sampling at a 16GB die density, complements the previously announced 50nm single-level cell

17   (SLC) products that the companies are shipping today at a 4GB die density.  The new MLC

18   NAND product caps a year of productive activity in which Intel and Micron aggressively ramped

19   a state-of-the-art 300mm Flash manufacturing factory network and are in the midst of developing

20   sub-40nm NAND Flash Memory products.

21       58.     The most current and fastest Flash Memory was unveiled in May 2007.  The

22   Hyperlink NAND (HLNAND(TM)) Flash. A breakthrough Flash Memory architecture and

23   interface that will dramatically improve the performance of computer products that use Flash

24   Memory, including solid state drives (SSD's), Flash Memory cards and USB Flash drives.  As the

25   first new Flash Memory architecture and device interface in 15 years, HLNAND Flash is a high-

26   performance solution that combines MOSAID's own HyperLink memory technology with

27

28                                    **CLASS ACTION COMPLAINT**

1   industry standard NAND Flash cell technology to deliver the industry's most advanced feature set,

2   reaching sustained I/O bandwidths more than ten times higher than conventional Flash.

3   HLNAND Flash delivers sustained read and write bandwidth up to 800MB/s using existing

4   NAND Flash cell technology.  HLNAND Flash offers a highly expandable memory subsystem,

5   supporting up to 255

6   devices on a single interface.  The improved write scheme provides significant improvements to

7   program and erase endurance and also enables lower voltage operation to yield lower power

8   consumption in portable applications.

9       59.    Toshiba America Electronic Components, Inc. commercialized a new embedded

10  NAND Flash Memory series, which complies with the eMMC(TM) standard and achieves the

11  industry's largest capacity.  The new 16 gigabyte (GB) devices are designed for application in

12  mobile consumer products, such as mobile phones and video cameras.

13      60.     The new 16GB chip combines eight 2GB NAND chips fabricated with Toshiba's

14  cutting-edge 56nm process technology, along with a controller chip, in a standard small size

15  package.  The new embedded memory offers advantages that realize a versatile, easily applied

16  solution: the largest capacity yet achieved in this product category will bring new capabilities to

17  mobile consumer products; integration of a dedicated controller reduces product development

18  burdens on product manufacturers; and full compliance with the MultiMediaCard Association

19  (MMCA) Ver. 4.2 high speed memory standard for memory cards, which supports standard

20  interfacing, a maximum data transfer rate of 52MB/sec. and simplified embedding in products.

21      61.    Toshiba will launch a series of embedded NAND Flash Memories based on the

22  new technology, ranging from 1 GB to 16GB in capacity.  This wide line-up of eMMC(TM)

23  compliant memories will enable application of these devices in a wide range of products.  There is

24  a growing demand for memories with a controller function that minimize development

25  requirements and ease integration into system designs.  Toshiba has responded with products such

26  as the LBA-NAND(TM) memory, which incorporates basic control functions for NAND

27

28                              **CLASS ACTION COMPLAINT**

applications, and GB-NAND(TM), a large capacity chip with an SD interface.

**E.    Defendants Opportunities To Exchange and Monitor Pricing Information**

62.    Numerous industry trade organizations facilitate Defendant Flash Memory cartel activities.  All of the Defendants are members of the Joint Electron Device Engineering Council ("JEDEC") Solid State Technology Association, a standard-setting organization which over the years has held dozens of general membership meetings and regional meetings across the world.  In addition, Hynix and Micron are among the founding members of the Open NAND Flash Interface group, the purpose of which is to meet and discuss standards and production of NAND Flash Memory products.  Among the other members of the ONFI group are Micron, Hitachi & Winbond.

   a.    Defendants had ample opportunities to meet over the years at various electronics conventions and other industry activities and expos across the world to conduct cartel activities.  For example, Hitachi, Lexar (now part of Micron), Mitsubishi, Renesas, Samsung, Toshiba and Winbond, or their affiliates, are members of the CompactFlash Association which was founded in 1995 as "a non-profit, mutual- benefit" association to promote various forms of flash memory. Over the years, CompactFlash members have met in Japan, Germany, the United Kingdom and the United States.

   b.    Members first got together in New Orleans in February 1997 to meet and give demonstrations of their products at PMA 97.  PMA stands for Photo Marketing Association, which annually conducts an international photo industry expo.  On March 10-11, 1997, CompactFlash held its first general meeting, with product demonstrations and press briefings, in London.

   c.    Other CompactFlash meetings and presentations were held:

   - January 8, 1998, Consumer Electronics Show in Las Vegas.
   - February 10, 1998, PMA 98 in New Orleans.

**CLASS ACTION COMPLAINT**

1

- September 16, 1998, Photokina 98 in Cologne, Germany.

2

- September 30, 1998, World PC Expo in Tokyo.

3

- January 7, 1999, International Consumer Electronics Show, 1999 in

4

  Las Vegas.

5

- February 18, 1999, PMA 1999 in Las Vegas.

6

- September 7, 1999, World PC Expo 99 in Tokyo.

7

- December 27, 1999, Consumer Electronics Show 2000 in Las

8

  Vegas.

9

- September 20, 2000, Photokina 2000 in Koln, Germany.

10

- October 17, 2000, World PC Expo 2000 in Tokyo. At this event

11

  Compact Flash also conducted "a free Host Develop Seminary" at

12

  Tokyo Fashion Town, according to a news release. "Presentations

13

  will be in Japanese and handouts will also be in Japanese," the

14

  release said.

15

- January 6, 2001, Consumer Electronics Show 2001 in Las Vegas.

16

- February 11, 2001, PMA 2001 in Orlando, Florida.

17

- January 8, 2002, International Consumers Electronics Show 2002 in

18

  Las Vegas.

19

- September 25, 2002, Photokina 2002 in Koln Germany.

20

- October 16, 2002, World PC Expo in Tokyo.

21

- September 17, 2003, World PC Expo in Tokyo.

22

- January 5, 2006, International Consumers Electronics Show 2006 in

23

  Las Vegas. The CompactFlash Association and 60 of its members

24

  met at the show to celebrate the 10th anniversary of the founding of

25

  the association and presented exhibits, according to a news release.

26

63.    The September 7, 1999 World PC Expo '99 in Tokyo was of special significance

27

28

**CLASS ACTION COMPLAINT**

1   with indications it was the site of the birth of cartel-like activities.  The CompactFlash Association

2   had 50 members exhibiting at the Expo, a record number for an international show.  In addition to

3   special meetings, dinners and other activities at the Expo (which attracted 350,000 corporate

4   employees and IT professionals)  that could translate into cartel actions, the sponsor of the Expo

5   said in a news release: "Networking opportunities will also be promoted for overseas exhibiting

6   companies by holding an International Business Partnership Party where company representatives

7   can meet with Japanese buyers and an International Business Seminar that will examine IT

8   industry/market trends in China, India and Taiwan." The release also said: "WORLD PC EXPO

9   has gained a reputation as a gateway to the world's second largest market in IT and as a place

10  where the alliances and OEM partners from the information home appliance age assembly for

11  Asia's largest IT showcase...Most overseas exhibiting companies see the EXPO as a chance to

12  meet potential business partners in Asian markets, including the vast emerging market in China."

13          64.     The structure of the market allowed Defendants to maintain and enforce their cartel

14  using methods such as price signaling.  On March 20, 2006, Hynix warned investors that the

15  prices of NAND Flash Memory could fall as much as 50% for the year.  The next day, Samsung

16  publicly announced that prices would recover and stabilize.  As of August 2006, Flash Memory

17  prices had stabilized, in part, as a result of reduced inventory from manufacturers.  "Apple to spur

18  NAND Flash Market, firm says," Electronic News, August 9, 2006.

19          65.     One commentator noted the pervasiveness of cartel activity among the Defendants

20  and others within the overall semiconductor industry - "If the DOJ wanted to, it could just go

21  down every line in the semiconductor industry and find the same issue,' said Gartner, Inc. analyst

22  Richard Gordon.  'That's because there are a relatively few number of suppliers in the chip

23  industry and an open flow of communication between competitors and customers, who may not

24  define price fixing the same way the DOJ does,' he said."

25  (http://blog.tmcnet.com/regulations/enforcement/doj-subpoenas-go-to-amd-nvidia-antitru

26  st-violations-eyed.asp)

27

28                                  **CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

66.     Certain websites, such as DRAMeXchange (found at http://www.dramexchange.com), allow Defendants to track each other's Flash Memory prices as well.

67**.**     Several of the Defendants Headquarters are located within blocks of each other on the same street in San Jose, California. This proximity provides unlimited opportunities for those Defendants to participate in Flash Memory cartel activities.

- Hynix Semiconductor America, Inc., 3101 North First Street

- Mosel Vitelic Corporation, 3910 North First Street

- Samsung Semiconductor, Inc., 3655 North First Street

- Winbond Electronics Corporation America, Inc. 2727 North First Street

- Another Defendant in San Jose, Renesas Technology America, Inc., is located nearby at 450 Holger Way.

68.  Additionally, Defendants Mosel Vitelic , Inc and Winbond Electronic Corporation are located in the same technology office park, Science-Based Industrial Park, in Hsinchu, Taiwan.

69. The private dining and banquet rooms at Birk's Restaurant, located at 3955 Freedom Circle in Santa Clara, California, are considered the quintessential gathering place for the top executives in Silicon Valley, including those from firms located on North First Street in San Jose (just a few miles away) and those visiting from oversees. Various defendants and co-conspirators met at least once at Birk's during the class period to carry out their cartel activities, which included discussions on Flash Memory prices, discussions where parties agreed to fix prices, and agreements on the methods of monitoring and enforcing the agreed-upon prices and markets.

70. All of the above opportunities to exchange and monitor Flash Memory pricing information allowed Defendants to communicate their intended prices for Flash Memory to each other throughout the Class Period. These conversations were not simply the sharing of publicly available information. Rather, Defendants communicated with each other  prior to price moves and collected competitive information similar to the pattern seen in the DRAM and SRAM

**CLASS ACTION COMPLAINT**

markets. This information sharing was intended to, and in fact did, cause the price of Flash Memory to be stabilized and/or artificially inflated in violation of antitrust laws.

**F.      Pricing Trend In Flash Memory Industry**

71.      As a result of Defendants' cartel like activity, prices for Flash Memory have been maintained at supra-competitive levels from at least 1999 through the present.  Prior to 1999, the average selling price for all Flash Memory was at a decline.  Beginning in 2000, and continuing through the first quarter of 2001, the aggregate average price of Flash Memory stabilized, then increased.

72.      While Flash Memory prices began to somewhat decline at the end of 2001, the cartel created by Defendants operated to palliate those declines so that prices were still at supra-competitive levels.  Defendants' collusive activity still continues and has had the effect of keeping prices at supra-competitive levels.

**G.      DOJ Investigation**

73.      The trend in the average prices of Flash Memory is similar to a contemporaneous price movement in the DRAM market.  The pricing of, and behavior of, participants in the DRAM market during this period is currently the subject of a price-fixing investigation by the Antitrust Division of the U.S. Department of Justice.  Several of the Defendants named herein are either currently the subject of the DRAM investigation, or have pleaded guilty to price-fixing charges with respect to DRAM.  Samsung, for example, was fined $300 million by the United States in October 2005 for participating in DRAM price-fixing.  Samsung is also under investigation by the DOJ (along with some of the other Defendants) for fixing the prices of SRAM.  The agents and employees of Samsung, Hynix, and Micron implicated in the DRAM price-fixing conspiracy are the same agents and employees that are responsible for pricing SRAM and Flash Memory. Samsung and Hynix have pled guilty to price-fixing in the DRAM market during the period from 1999 to 2002 and have paid substantial fines for those unlawful activities.  Samsung has paid $300 million while Hynix has paid $185 million.  Micron was the amnesty applicant in the

1  DRAM price-fixing investigation.

2      74.    In October 2006, the DOJ sent subpoenas to approximately 23 companies,

3  including Samsung, Toshiba, Hynix, Renesas, and Micron, in connection with an investigation of

4  cartel activity in the SRAM industry.  A DOJ spokesperson was quoted as saying: "[t]he U.S.

5  Department of Justice's antitrust division is conducting an investigation regarding anti-

6  competitive practices against chief SRAM manufacturers."  DOJ's SRAM investigation concerns

7  anti-competitive conduct that was continuing at least as recently as 2005.

8      75.    In March 2007, Toshiba and Hynix declared a truce by agreeing to a cross-

9  licensing deal on NAND Flash Memory chips, ending a bitter two-and-a-half year legal tussle

10  over patents.  "We made the cross-licensing agreement due to mutual needs," said James Kim,

11  vice-president of investor relations at Hynix.  Hynix and Toshiba also signed patent cross-

12  licensing and product supply agreements covering semiconductor technology.  Under the terms of

13  the deal, Hynix pays Toshiba a cross-licensing fee and Toshiba is able to buy chips from Hynix.

14  The agreement settled all pending patent-related litigation between the companies in the US and

15  Japan.

16      **H. Unfair Business Practices and Anti-Competitive Conduct**

17      76.    Defendants, which includes their officers, directors, and employees, participated in

18  anti-competitive behavior and unfair business practices which effectuated harm on businesses and

19  consumers and violated standards of ethical behavior through the following conduct:

20          a.    participating in meetings and conversations, including through various

21  trade              associations and committees, to discuss the prices of Flash Memory in the

22                  United States;

23          b.    agreeing, during those meetings and conversations, to charge prices at

24                  specified levels and otherwise to increase and maintain prices of Flash

25                  Memory sold in the United States;

26          c.    issuing price announcements and quotations in accordance with the

27

28                                  CLASS ACTION COMPLAINT

agreements reached; and selling Flash Memory to various customers in the United States at non-competitive prices.

77.    Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly in the State of California.  Statements concerning the prices and market conditions for Flash Memory were disseminated by Defendants from and into California on a regular and continuous basis.  Therefore, all members of Class, whether or not California residents, are entitled to recover under California law, as well as the laws of their own states.

## VIII.    ACTIVE CONCEALMENT OF CONSPIRACY

78.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff.  Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before class action litigation was commenced.

79.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statues of limitations otherwise applicable to the allegations herein have been tolled.

## IX.    VIOLATIONS ALLEGED

### First Claim

### (Violation of Section 1 of the Sherman Act)

80.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth above.

CLASS ACTION COMPLAINT

81.     Although the precise dates are not known to Plaintiff  but are known to defendant Plaintiff alleges upon information and belief that from as early as January 1, 1999, and continuing through at least through the present, Defendants and their co-conspirators entered into agreements, understandings, and a conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Flash Memory in the United States.  These agreements, understandings, and the conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. 1.

82.     Defendants' and their co-conspirators activities as alleged herein were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

83.     In entering into and conducting the conspiracy as agreed, Defendants and their co-conspirators committed the acts they agreed to commit, including those specifically set forth herein and additional acts and conduct in furtherance of the conspiracy, with the specific goals and intent:

        a.     of fixing, raising, and maintaining the price of Flash Memory;

        b.     of allocating amongst themselves markets for Flash Memory;

        c.     of submitting rigged bids in order to secure and carry out certain Flash Memory contracts; and

        d.     of allocating amongst themselves the production of Flash Memory.

84.     Among the effects of Defendants' and their co-conspirators acts have been:

        a.     Restraint, suppression, and/or elimination of price competition in the sale of Flash Memory in the Untied States;

        b.     The raising, fixing, maintenance, and stabilization of prices at artificially high and non-competitive levels for Flash Memory sold by Defendants and their co-conspirators in the United States; and

        c.     The denial to consumers of Flash Memory products of the benefits of competition.

CLASS ACTION COMPLAINT

85.    Plaintiff and the members of the Class have been injured and will continue to be injured in their business and property by paying more for Flash Memory purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for personal computers, mobile phones and other products in which Flash Memory is a component as a result of higher prices paid for Flash Memory by the manufacturers of those products.

86.    Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## Second Claim

### (Violation of the California Cartwright Act)

87.    Plaintiff realleges the paragraphs set forth above and incorporates them herein as if fully alleged.

88.    Defendants' acts in violation of federal and state antitrust laws and other laws as alleged herein were carried out, centered in, effectuated from and perfected largely within the State of California.  Defendants' conduct within California injured all members of the Class throughout the United States.  As a result, this claim for relief under California law is brought on behalf of all members of the Class, regardless of their residence and/or domicile.

89.    From at least as early as January 1, 1999, and continuing until the present, Defendants and their co-conspirators entered into and engaged in a continuing conspiracy in violation of Section 16720 of the California Business and Professional Code.  Defendants and their co-conspirators acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, Flash Memory at prices in excess of what they would have been absent Defendants' and their co-conspirators' conduct as alleged herein.

90.    The violations of Section 16720 of the California Business and Professions Code as alleged herein comprised a continuing unlawful trust and concert of action between and among the Defendants and their co-conspirators.  The substantial terms of this unlawful trust were

**CLASS ACTION COMPLAINT**

1  to fix, raise, maintain and stabilize the prices of, and to allocate markets for, Flash Memory.

2      91.    In carrying out this illicit trust and conspiracy, Defendants and their co-

3  conspirators:

4          a.    fixed, raised, maintained, and stabilized the price of Flash Memory;

5          b.    allocated markets for Flash Memory among themselves;

6          c.    submitted rigged bids for the award and performance of certain Flash

7                Memory contracts; and

8          d.    allocated amongst themselves the production of Flash memory.

9      92.    Defendants' and their co-conspirators' actions caused:

10         a.    a restraint of price competition in the sale of Flash Memory in the State of

11               California and throughout the United States;

12         b.    The fixing of artificially high, non-competitive prices for Flash Memory

13               sold by Defendants and their co-conspirators in the State of California and

14               throughout the United States; and

15         c.    Plaintiff and the class to be deprived of the benefit of free and open

16               competition in the pricing of Flash Memory.

17     93.    Plaintiff and the other members of the Class paid higher prices for Flash Memory

18            than they would have paid in the absence of Defendants' and their co-conspirators'

19            acts.

20     94.    Plaintiff and the members of the Class have been injured in their business and

21  property as a direct and proximate result of Defendants' unlawful conduct because they paid more

22  for products containing Flash Memory than they otherwise would have paid but for Defendants'

23  unlawful conduct.  Plaintiff and the class seek treble damages and the costs of the suit, including

24  reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and

25  Professions Code, as a result of Defendants' and their co-conspirators' violations of Section 16720

26  of the California Business and Professions Code.

27

28                              **CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Third Claim**

**(Violation of the California Unfair Competition Law)**

95.    Plaintiff realleges the allegations set forth above and incorporates them herein as if fully set forth.

96.    Defendants' acts in violation of federal and state antitrust laws and other laws as alleged herein were carried out, centered in, effectuated from and perfected largely within the State of California.  Defendants' conduct within California injured all members of the Class throughout the United States.  As a result, this claim for relief under California law is brought on behalf of all members of the Class, regardless of their residence and/or domicile.

97.    Beginning no later than January 1, 1999, and continuing thereafter up to the present, Defendants and their co-conspirators violated Section 17200 by engaging in acts of unfair competition as alleged herein.

98.    This Claim is asserted pursuant to Sections 17203 and 17204 of the California Business and Professions Code.  Plaintiffs and the class seek restitution from Defendants for the acts alleged herein which violate Section 17200 of the California Business and Professions Code.

99.    The acts of Defendants and their co-conspirators as set forth herein are unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200 and include, but are not limited to, the following:

   a.    Violations of Section 1 of the Sherman Act;

   b.    Violations of Section 16720, et seq., of the California Business and Professions Code;

   c.    Other acts by Defendants and their co-conspirators as alleged herein which are otherwise unfair, unconscionable, unlawful or fraudulent within the meaning of Section 17200, California Business and Professions Code; and

100.    Plaintiff and each of the Class members are entitled to full restitution and/or

**CLASS ACTION COMPLAINT**

1   disgorgement of all revenues, earnings, profits, compensation and benefits which Defendants may

2   have obtained as a result of such business acts or practices.

3          101.    Defendants' and their co-conspirators' unlawful and unfair business practices are

4   believed to be continuing and there is no reason to believe that Defendants will not cease such

5   conduct.

6          102.    The acts of Defendants and their co-conspirators as alleged herein have caused and

7   continue to cause Plaintiff and the members of the Class to pay higher prices for products

8   containing Flash Memory than they would have paid but for these acts.  Plaintiff and the members

9   of the Class suffered injury in fact and lost money or property as a result of such unfair

10  competition.  This conduct violates 17200 of the California Business and Professions Code.

11         103.    Defendants and their co-conspirators have been unjustly enriched, and Plaintiff and

12  the class are entitled to relief including restitution and/or disgorgement of all revenues, earnings,

13  profits, compensation and benefits which may have been obtained by Defendants as a result of

14  such business practices, pursuant to the California Business and Professions Code, Sections 17203

15  and 17204.

16                                    **Fourth Claim**

17           **(Violation of State Antitrust and Unfair Competition Law)**

18         104.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every

19  allegation set forth in the preceding paragraphs of this Complaint.

20         105.    By reason of the foregoing, Defendants have entered into agreements in

21  restraint of the trade in violation of:

22              a.      Alabama Code  8-10-1 et seq.

23              b.      Arizona Revised Stat.  44-1401 et seq.

24              c.      District of Columbia Code Ann.  28-4503 et seq.

25              d.      Iowa Code  553.1 et seq.

26              e.      Kansas Stat. Ann.  50-101 et seq.

27

28                                **CLASS ACTION COMPLAINT**

1          f.      Maine Rev. Stat. Ann. 10,  1101 et seq.

2          g.      Michigan Com. Laws. Ann.  445.773 et seq.

3          h.      Minnesota Stat.  325D.52 et seq.

4          i.      Mississippi Code Ann.  75-21-1 et seq.

5          j.      Nebraska Rev. Stat.  59-801 et seq.

6          k.      Nevada Rev. Stat. Ann.  598A et seq.

7          l.      New Mexico Stat. Ann.  57-1-1 et seq.

8          m.      North Carolina Gen. Stat.  75-1 et seq.

9          n.      North Dakota Cent. Code  51-08.1-01 et seq.

10          o.      Pennsylvania common law.

11          p.      South Dakota Codified Laws Ann.  37-1 et seq.

12          q.      Tennessee Code Ann.  47-2-101 et seq.

13          r.      Vermont Stat. Ann. 9  2453 et seq.

14          s.      West Virginia   47-18-1 et seq. and

15          t.      Wisconsin Stat.  133.01 et seq.

16      106.    Class Members in each state listed above paid supra-competitive, artificially

17  inflated prices for Flash Memory.  As a direct and proximate result of Defendants' unlawful

18  conduct, such members of the Class have been injured in their business and property in that they

19  paid more for Flash Memory products than they otherwise would have paid in the absence of the

20  Defendants' unlawful conduct.

21                          **Fifth Claim**

22      **(Violation of State Consumer Protection and Unfair Competition Laws)**

23      107.    Plaintiff incorporates and realleges, as thought fully set forth herein, each and

24  every allegation set forth in the preceding paragraphs of this Complaint.

25      108.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

26  fraudulent acts or practices in violation of the state consumer protection and unfair competition

27

28                          **CLASS ACTION COMPLAINT**

1    statues listed below.

2       109.    Defendants have engaged in unfair competition or unfair or deceptive acts or

3    practices in violation of

4          a.    Alaska Stat.  45.50.471 et seq.

5          b.    District of Columbia Code  28-3901 et seq.

6          c.    Florida Stat.  501.201 et seq.

7          d.    Hawaii Rev. Stat.  480 et seq.

8          e.    Idaho Code  48-601 et seq.

9          f.    Kansas Stat.  50-623 et seq.

10         g.    Louisiana Rev. Stat.  51:1402 et seq.

11         h.    5 Maine Rev. Stat.  207 et seq.

12         i.    Montana Code  30-14-101 et seq.

13         j.    Nebraska Rev. Stat.  59-1601 et seq.

14         k.    New Mexico  57-12-1 et seq.

15         l.    New York Gen. Bus. Law  349 et seq.

16         m.    North Carolina Gen. Stat.  75-1.1 et seq.

17         o.    Oregon Rev. Stat.  646.605 et seq.

18         p.    Rhode Island Gen. Laws.  6-13.1-1 et seq.

19         q.    South Carolina Code Laws  39-5-10 et seq.

20         r.    Utah Code  13-11-1 et seq.

21         s.    9 Vermont  2451 et seq.

22         t.    West Virginia Code  46A-6-101 et seq.

23         u.    Wyoming Stat.  40-12-105 et seq.

24       110.    Class Members in the states listed above paid supra-competitive, artificially

25    inflated prices for Flash Memory products.  As a direct and proximate result of Defendants'

26    unlawful conduct, Plaintiff and the members of the Class have been injured in their business and

27

28
                              **CLASS ACTION COMPLAINT**

property in that they paid more for Flash Memory products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### Sixth Claim

### (Unjust Enrichment and Disgorgement of Profits)

111.    Plaintiff realleges the allegations set forth above as if fully set forth herein.

112.    As a result of the conduct alleged herein, defendants and their co-conspirators have been unjustly enriched through overpayments by Plaintiff and the other Class Members and the resulting profits.

113.    Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and the other Class Members.

114.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## X.    PRAYER FOR RELIEF

WHEREFORE, plaintiff prays:

A.    That the Court determine that class treatment pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) is appropriate for the claims alleged herein under the Sherman Act, the California Cartwright Act, the California Unfair Competition Law, the state antitrust and unfair competition laws, and the common law;

B.    That the Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, trust, understanding, conspiracy, or combination alleged herein, or from entering into any other conduct, contract, trust, understanding, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

CLASS ACTION COMPLAINT

1    C.    That the unlawful conduct, contract, conspiracy or combination alleged herein be

2    adjudged and decreed to be:

3         i.    a restraint of trade or commerce in violation of section 1 of the Sherman

4               Act;

5         ii.   a violation of the California Cartwright Act;

6         iii.  a violation of the California Unfair Competition Law;

7         iv.   violations of the state antitrust and unfair competition laws; and

8         v.    acts of unjust enrichment.

9    D.    That Plaintiff and the Class recover damages, as available under the law, and that a

10   judgment be entered in favor of Plaintiff and the Class jointly and severally against Defendants in

11   an amount to be trebled in accordance with applicable laws;

12   E.    That Plaintiff and members of the Class be awarded restitution, including

13   disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and

14   acts of unjust enrichment;

15   F.    That Plaintiff and members of the Class be awarded pre- and post-judgment

16   interest from and after the date of service of the initial complaint in this action;

17   G.    That Plaintiff and members of the Class recover their costs of this suit, including

18   reasonable attorneys' fees as provided by law; and

19   H.    That Plaintiff and members of the Class receive such other and further relief as the

20   nature of the case may require or as the Court deems just, equitable, and proper.

21

22   Dated: August 8, 2007                  MURRAY & HOWARD, LLP
                                            JENKINS MULLIGAN & GABRIEL, LLP
23

24

25                              By:    _____

26                                     SCOTT J. YUNDT

27                                     Attorneys for Plaintiffs

28
                              **CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**XI.    DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.

Dated: August 8, 2007                    MURRAY & HOWARD, LLP

JENKINS MULLIGAN & GABRIEL, LLP

By:    _____

SCOTT J. YUNDT

Attorneys for Plaintiffs

**CLASS ACTION COMPLAINT**